**VANDERBORGHT, a Minor, in re Petitioner.**

Common Pleas Court, Cuyahoga County.

No. 609991. Decided February 6, 1950.

E. E. Stearns, Thomas G. Thompson, Cleveland, on behalf of the petitioner.

Guy R. Wheeler, Cleveland, on behalf of the respondent.

## OPINION

By WOODS, J.:

Gentlemen, the Court has reached certain conclusions in this matter which he will deliver orally.

This matter comes on to be heard on a petition for writ of habeas corpus in which it is alleged by the petitioner that in 1934 he was married to one Marie Jeanne Verhulst, now Mrs. William Nusbaum of 14403 Gramatan Avenue, in the city of Cleveland, and that two children were born of said marriage, namely, Paul Jean and Marcus Frederick, now aged seven; that he was divorced from said Marie Jeanne by proceedings regularly instituted before the officer of Civil State of the Commune of Uccle, Belgium, on December 11, 1946; that as a result of said divorce action he was awarded the legal custody of said son Paul and the said Marie Jeanne Verhulst was awarded the legal custody of the son Marcus, under provisions that both parents should exercise supervision over the welfare of both children and that each parent should have the right to visit the child in the other's custody and that the two children should spend their vacations together.

And it is alleged that under the Belgian law divorced persons are prohibited from remarrying for three years, but that Marie Jeanne was married to William Nusbaum within one year and that both Mr. and Mrs. William Nusbaum thereafter wrongfully and secretly removed said minor child, Marcus Frederick, from the jurisdiction of the Belgian court and to the United States in contravention of the terms of the divorce decree; that thereafter the petitioner appealed to the Brussels County Court of Justice which had continuing

jurisdiction over the said minor child, Marcus, on February 11, 1949, obtained a judgment from that tribunal altering the legal custody of the said Marcus and conferring such custody on the petitioner herein and authorizing him to regain possession of the said Marcus wherever found; and there are other allegations not pertinent to this particular phase of the case.

On the hearing of the matter professional statements of counsel for the petitioner were made as an opening statement and as part of such statement there was introduced in evidence a stipulation agreement made by and between counsel for and on behalf of their respective clients which was marked Exhibit A.

It provided that it is admitted that a translation into the English language of the record of proceedings in the court in Belgium attached to such stipulation and marked Exhibit A is a genuine and authentic record of the proceedings of that court.

The record so introduced shows that the Brussels County Court of Justice on the 11th day of February, 1949, passed a judgment, the material parts of which are:

"Francois Jules Louis Vanderborght, a company manager, resident at 309 Avenue deKersbeek, in Uccle, and Mrs. Marie Jeanne Germaine Verhulst, without trade, having elected residence at 7 rue Lambert Crickx, Anderlecht, and her present husband, Mr. Nusbaum, resident at 1138 Green Street, Muskegon, Michigan, U. S. A., defendants."

The decree further provides:

"Considering the summonses served on the 6th day of November, 1948, by registered writ of the process server, Adolphe Vanderperren, and the plaintiff's statement; and

"Considering section 4 of the law of June 15, 1935, on the use of languages in justice matters;

"Whereas, the purpose of the suit is to here declare that the custody of the child under age, Marcus Frederik Madeline Vanderborght, entrusted to the defendant by an agreement before the divorce by mutual consent pronounced between the plaintiff and the defendant, will be withdrawn from the latter and entrusted to the plaintiff, with the authorization for him to take the child back."

The decree further provides:

"Whereas the defendants, though regularly served, did not

appoint any solicitor; and for these considerations the court declares that the custody of the child, Marcus Frederik Madeline Vanderborght is withdrawn from the defendant and entrusted to the plaintiff."

By further statements of counsel, considered by this Court as part of the opening statement of counsel, concerning which no controversy of fact existed, it appears that Mrs. Nusbaum came to the United States with the minor child, Marcus, in April, 1947, and was married to William Nusbaum, an American citizen, in May of 1947, and has remained in the United States with the minor child, Marcus, continually since her arrival here; that she is now a naturalized citizen of this country and that proceedings are now pending in the matter of the naturalization of the minor child, Marcus.

Whereupon the counsel for respondent moved that the petition be dismissed on the ground that at the time the supplemental decree of the County Court of Brussels was entered, that, that court had no jurisdiction of the parties defendant.

On the state of the record this Court has presented to it the following questions:

First. Must or may this Court give full faith and credit to the decree of the County Court of Brussels, especially in reference to the modification of that decree?

I understand that no treaty exists between the Kingdom of Belgium and the United States, by the terms or effect of which the judgments of either country are prevented from being examined anew upon the merits when sued upon in the courts of the country other than that in which it was obtained.

Whether the judgments of our courts are recognized as conclusive in Belgium, or not, is not revealed by the evidence or in the briefs of counsel.

An examination of the law of Belgium on this point would be helpful, but the Court does not have the means of making such an examination.

It is stated, however, by Mr. Justice Gray in Hilton v. Guyot, 159 U. S. 113, at 218:

"Where, as in the case between Belgium and France, there is no such treaty, the Belgian Court of Cassation holds that the foreign judgment may be re-examined upon the merits. Constant 111, 116; Moreau, No. 189; Clunet, 1887, page 217; 188, page 837; Bigott, 439. And in a very recent case, the Civil Tribunal of Brussels held that, 'considering that the

right of revision is an emanation of the right of sovereignty; that it proceeds from the imparium, and that, as such, it is within the domain of public law; that from that principle it manifestly follows that, if the legislature does not recognize executory force in foreign judgments where there exists no treaty upon the basis of reciprocity, it cannot belong to the parties to substitute their will for that of the legislaure, by arrogating to themselves the power of delegating to the foreign judge a portion of sovereignty.' "

The Court finding no Belgian case to the contrary and none being pointed out by counsel, this Court assumes that the quoted holding of the Court of Belgium still to be the law of that country.

The entire matter, as far as our courts are concerned, was discussed and decided in an exhaustive 113-page opinion by Mr. Justice Gray in Hilton v. Guyot, supra, wherein it was stated, in the final syllabus:

"A judgment for a sum of money, rendered by a court of a foreign country, having jurisdiction of the cause and of the parties, in a suit brought by one of its citizens against one of ours, is prima facie evidence only, and not conclusive of the merits of the claim, in an action brought here upon the judgment, if by the law of the foreign country, as in France, judgments of our own courts are not recognized as conclusive."

It therefore appears that the decree of divorce and custody of children as originally entered and as later modified, are prima facie evidence in this court and respondent's motion would not lie if the Belgian court had jurisdiction of the parties. This leads to an examination of the second question.

Did the County Court of Brussels have jurisdiction of the person of Mrs. Nusbaum and the minor child, Marcus, at the time the decree of that court was modified? Admittedly, at that time neither Mrs. Nusbaum or the minor child, Marcus, was within the jurisdiction of the Kingdom of Belgium, but were, in fact, domiciled in the United States. It is to be remembered that the custody of the minor child, Marcus, was in the mother, so that the domicile of the child was that of the mother at the time that she came here.

The decree recites that the defendant "elected residence at ▉ rue Lambert, Crickx, Anderlecht," and that she was "regularly served" and "did not appoint any solicitor."

This Court not having the means of determining by what

law of Belgium the defendant "elected residence," or was "regularly served" and none being pointed out by counsel, the Court is of the opinion that it is not required to go further than it would have to go if the judgment were that of a sister State.

Now, Cooke v. Cooke, 248 Pacific, 83 (Utah) states:

"While the full faith and credit clause of the Constitution applies only to judicial proceedings of courts of other States, yet, under the doctrine of comity, we are not required to give greater effect to an order or judgment of a foreign country than we would to that of a sister State."

What, then, is the situation, if the judgment, as shown by Exhibit A, were that of a sister State?

It was said in Halvey v. Halvey, 330 U. S., 610, at page 614:

"If the court of the State which rendered the judgment had no jurisdiction over the person or the subject matter the jurisdictional infirmity is not saved by the full faith and credit clause."

In the celebrated case of Williams and others v. North Carolina, 325 U. S., 226, the second syllabus of that case is as follows:

"A decree of divorce rendered in one State may be collaterally impeached in another by proof that the court which rendered the decree had no jurisdiction, even though the record of the proceedings in that court purports to show jurisdiction."

Tested, then, by the law of comity between the States what is this situation? I believe that the law is well stated and amply supported by competent authority in 15 Ruling Case Law at page 920, Section 401 under "Judgments."

"The rule that the judgment of a foreign court is conclusive is uniformly qualified with the limitation that it has, in a give case, jurisdiction of the person and the subject matter, and in the absence thereof the judgment is of no effect. The question of jurisdiction is, therefore, always open to inquiry, although the record in the case recites that the court had jurisdiction, and for the purpose of impeaching the judgment or want of jurisdiction resort may be had either to the face of the record itself or to extrinsic evidence. In

a suit on a foreign judgment, the judgment debtor may successfully defend by showing that he was not served with process, and did not appear in the original suit."

Consideration has been given to the situation, as in this case, where the court had jurisdiction of the subject matter and the parties in a divorce proceeding, and properly awarded custody of the children and thereafter upon motion modified the award as to custody. In many States, and in ours, the court has continuing jurisdiction and power to modify its decree as to custody by reason of change of conditions. There are decisions which hold that the decree of modification was valid and entitled to full faith and credit, even though the party against whom the modified decree was made and the children affected were beyond the jurisdiction of the court, and were not served with process.

These cases, several cited by counsel for petitioners in his reply brief, and others, have been examined by the Court with such care as time would permit and have been analyzed. The cases contra, cited by counsel for the respondent in his brief, with others, have, likewise, been examined and analyzed.

In the recent case of Vida v. Vida, reported in the January 30, 1950, issue of the Ohio Bar, **86 Oh Ap 139,** and being a decision of the Court of Appeals of Lorain County, decided April, 1949, a divorce had been granted in Lorain County in 1939 with personal service on the husband. Divorce was decreed to the wife, with custody of the minor child and an allowance of $4 per week for its support.

In 1948 a motion to modify the award and increase the allowance was filed and service by registered mail was made on the father then domiciled in Michigan.

On motion to set aside the service the court held:

"The attempt to invest the court with jurisdiction by such method was ineffectual. Service of notice by registered mail, upon a non-resident defendant, of motions filed in a case, where the court has continuing jurisdiction of the subject matter, is governed by **§11372 et seq, GC,** and may be made only when the action is one in which service by publication is permitted."

In the opinion the court refers to its prior opinion in **Collins v. Collins, 79 Oh Ap, 328;** 73 Northeastern 2nd, 814, wherein it said:

"The 'proper proceedings' to procure a modification may

be by motion filed in the same court which entered the order and in the same case in which the original order was made, or by petition filed in a separate action in the same court.

"In either event, whether by motion or petition, notice to the adverse party is essential to invest the court with jurisdiction to determine the question presented."

The case of **Black v. Black, 110 Oh St 392,** 1924, may be of some assistance. In that case an action was brought by Mrs. Black for a divorce and custody of the child in Franklin County, Ohio. The divorce was granted and custody of the child awarded to the mother. The case came before the Supreme Court on the ground that a constitutional question was involved. This question grew out of a claim that the trial court failed to give full faith and credit to a judgment, finding and decree of the Court of Suffolk County, Massachusetts, that court, both parties being properly in court, had previously awarded the custody of the child to the father, Mr. Black. The proceeding was a proceeding for custody alone and not for divorce.

In a per curiam opinion in affirming the decree as to the custody, the court said:

"Surely, if there was jurisdiction in the Common Pleas Court here to hear and determine the application for divorce or alimony; that jurisdiction would also extend to the determination of the custody of the minor child who had in fact been with her mother all the time referred to, and prior to that decree the Juvenile Court of Franklin County, Ohio, in a proceeding under the statute, had made the child a ward of the court and placed her in the custody of the mother.

"Upon the question of jurisdiction it need only be further stated that the defendant, not merely by his pleadings, but by his appearance in open court, waived any question of jurisdiction over his person, as is well settled by a long line of decisions of this court; the latest one, wherein the previous ones are cited, being Klein v. Lust, Ante, 197, 153 N. E., 527, decided April 15, 1924."

The final paragraph:

"This court might well have found that no debatable constitutional question was involved in this case and sustained the motion to dismiss the same. The judgment of the Court of Appeals is affirmed."

This case goes farther than the case at bar, since the court in Massachusetts had jurisdiction of the parties when its decree was entered awarding the custody to the father. The court doesn't discuss the matter at length, but just summarily disposed of it.

In Halvey v. Halvey, 330 U. S., 610, supra, there was the situation somewhat like the case at bar. The divorce was granted in Florida and custody of an infant child awarded to the mother. The father took the child to New York. The mother brought action in the New York court based on the Florida decree to secure the custody of the child. The New York court entered a decree granting the custody to the mother, providing for visitation by the father which had not been done in the Florida decision, and requiring a bond to be given by the mother of $5,000 conditioned that she would deliver the child to the father as provided in the decree for the purpose of visitation.

The Supreme Court of the United States in affirming the New York court said:

"So far as the full faith and credit clause of the Constitution is concerned, what Florida can do in modifying the decree, New York may do."

In the case of In re Volk, 254 Michigan, 25; 235 N. W. 854 (1931), the factual situation was that the mother and father were divorced in Toledo, Ohio, and custody of the child awarded to the mother.

The Juvenile Court in Lucas County, was presided over by one of the judges of the Common Pleas Court, and the Juvenile Court had exclusive jurisdiction over minors in certain cases. Proceedings were instituted in the Juvenile Court to the effect that the child did not have proper parental care. Both father and mother were served. Several other citations were issued in which both parents were served and certain orders were made by the court. Then the statement of facts continues:

"On October 10, 1930, another citation was issued by said Juvenile Court, served on the plaintiff herein, but not on the defendant herein for hearing on October 15, 1930, and under date of October 15, 1930, appears the following entry:

" 'Defendant in court, hearing had. Judge ordered sole and legal custody awarded to father. See Journal Entry.'

"The defendant, Hazel Volk, admits that in all proceedings had in said Juvenile Court up to and including September

10, 1930, she appeared in person in the Juvenile Court after service of due process, and it is conceded that no citations were served on defendant, Hazel Volk, for either of the hearings held on September 17th or October 15th, 1930; and that she was not present in court at either of said last two hearings.

"Neither the decree of divorce nor any of the orders made in the Juvenile Court of Ohio, expressly prohibited the mother from removing the child out of the jurisdiction of the Ohio courts, but on the 10th day of September, 1930, without the permission or knowledge of the Juvenile Court, or the knowledge or consent of the father, Frederick Volk, defendant, Hazel Volk, moved to the State of Michigan, taking the infant child with her."

The question certified to the Supreme Court of Michigan by the Circuit Court of Wayne County was this:

"Are the orders of the Juvenile Court for Lucas County, Ohio, modifying its previous orders for the temporary care and custody of the minor child, Gilbert Clyde Volk, made without service of process on defendant, Hazel Volk, and made after she had left the State of Ohio, with the child, and she has acquired a domicile in the State of Michigan, valid and binding, so that such orders cannot be collaterally attacked in the proceedings instituted in the Circuit Court for the County of Wayne, State of Michigan?"

And in the opinion of the court it is said:

"At the time the petition for the writ of habeas corpus was filed, the mother had acquired a domicile in the State of Michigan. The domicile of an infant until emancipation is that of the father. But, under the decree of divorce, the mother was given his unrestricted custody. His domicile thereafter became that of his mother, and, when she removed to this State and became domiciled here, the domicile of the child was in Michigan.

"When the minor became domiciled here he became a ward of this State (Kane v. Kane, 241 Michigan 96, 216 N. W. 437), and no longer subject to, or under the control of, the courts in Ohio. The orders thereafter made by the Juvenile Court of that State in no way affected his status, and do not severally constitute judgments which must be given full faith and credit under the provision in the Federal Constitution."

In People ex rel Wagner v. Torrence, 94 Colorado, 47,

facts were presented to the court very similar to the facts in this case. The third and fourth syllabi are as follows, the third syllabus:

"Domicile. The domicile of a parent having the custody of minor children is the domicile of the children."

Syllabus 4:

"Comity—Children—Custody. A court decree of one State awarding custody of a child is not binding upon the courts of another State under the full faith and credit clause of the Federal Constitution after the child has become domiciled in the latter State. Such a decree has no extra-territorial effect beyond the boundaries of the State where rendered."

A further analysis of the various cases would extend this opinion beyond reasonable limits, especially as each case must be studied in view of the particular facts, the local law and the surrounding circumstances.

The very extensive case law on the subject is fully digested in case notes appearing in 20 A. L. R. 815; 72 A. L. R., 441; 116 A. L. R., 1299; and especially in the 97-page note in 4 A. L. R. 2nd, page 7, to which reference is made.

Finding, as I do, that the petitioner and his wife, now Mrs. Nusbaum, were divorced in Belgium and the custody of the minor child, Marcus, was awarded to the mother by proceedings of which this Court must consider prima facie valid in all respects, and thereafter while mother and child were domiciled in the United States proceedings for modification of the decree by purported service unknown to our law was had and that such service, if made in this State would be invalid and confer no jurisdiction on the court to modify its decree, this Court, necessarily, finds that said decree of modification is not entitled to full faith and credit under the law of comity of nations; that under the original decree the mother has lawful custody of the minor child, Marcus, and that the petitioner herein has no right of custody, as far as the State of Ohio is concerned, other than the right of visitation granted him in the original Belgian decree.

In order to do justice between the parties the Court must examine the allegations, ascertain the facts respecting the matter in dispute and then declare the law arising upon the facts. This the Court has endeavored to do and in so doing

the Court has not been unmindful that the rules of law which have been considered are subject to modification should the welfare of the child require such modification.

The law relating to cases of this kind is not applied with the strictness of the law as applied to personal property.

Happily no claim has been made that Mrs. Nusbaum is not a fit person to have the custody of the child, so no issue has been presented on that matter.

If such claim would have been made, and I apprehend none could have been made, the Court would have found it necessary to have examined into the matter, even though Mrs. Nusbaum is now an American citizen.

The Court appreciates and acknowledges the legalistic manner in which distinguished counsel in this matter has presented the matter to the Court and the aid to the Court which their briefs has afforded.

Viewing the matter as I do the petition will, therefore, be dismissed at petitioner's costs and exceptions may be noted.